[Cite as *State v. Brown*, 2026-Ohio-2752.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

DAMETRIOUS D. BROWN,

    DEFENDANT-APPELLANT.

CASE NO. 1-25-34

OPINION AND
JUDGMENT ENTRY

Appeal from Allen County Common Pleas Court
Trial Court No. CR2024 0274

**Judgment Affirmed**

**Date of Decision:  July 20, 2026**

APPEARANCES:

*Max Hersch* for Appellant

*John R. Willamowski, Jr.* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Dametrious D. Brown ("Brown"), appeals the June 11, 2025 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from a narcotics investigation, during which law enforcement executed a search warrant on November 12, 2024 at 642 East Third Street in Lima, Ohio, where Brown was found on the premises. Law enforcement's search of the residence yielded marijuana, psilocybin mushrooms, methamphetamine, drug paraphernalia, and an operable firearm.

{¶3} On January 16, 2025, the Allen County Grand Jury indicted Brown on Count One of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(c), a second-degree felony; Count Two of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(b), a third-degree felony; and Count Three of having weapons while under disability in violation of R.C. 2923.13(A)(3), (B), a third-degree felony. The indictment included a firearm specification under R.C. 2941.141(A) as to Counts One and Two and forfeiture specifications under R.C. 2941.1417(A) as to all three counts. On January 24, 2025, Brown entered a written not guilty plea.

{¶4} On January 31, 2025, Brown filed a motion to suppress evidence, which the trial court denied on March 11, 2025.

{¶5} The case proceeded to a jury trial on June 10-11, 2025. On June 11, 2025, the jury found Brown guilty of all three counts alleged in the indictment as well as the firearm specifications. The jury further found that the Springfield XD .45 caliber pistol was subject to forfeiture but that $148.00 in currency identified in the forfeiture specifications was not subject to forfeiture.

{¶6} That same day, the trial court sentenced Brown to a mandatory minimum term of four years to a maximum term of six years in prison on Count One; to a mandatory 18 months in prison on Count Two; to 18 months in prison on Count Three; and to one year on the merged firearm specification.[1] The trial court ordered the sentences to be served consecutively for an aggregate indefinite prison term of eight to ten years, with six and one-half years mandatory.

{¶7} Brown filed his notice of appeal on July 1, 2025. He raises two assignments of error for our review.

**First Assignment of Error**

**The prosecution presented insufficient evidence that Dametrious Brown constructively possessed methamphetamine and psilocybin mushrooms. Tr.; *State v. Haynes*, 25 Ohio St.2d 264 (1971); R.C. 2925.0l(K).**

{¶8} In his first assignment of error, Brown argues that his possession convictions are based on insufficient evidence.[2] In particular, Brown contends that the State presented insufficient evidence that he constructively possessed the

---

[1] The trial court filed an amended judgment entry of sentence on July 14, 2025.
[2] Brown does not challenge his having weapons while under disability or firearm specification convictions.

methamphetamine and psilocybin mushrooms that law enforcement found in a common area of the residence.

*Standard of Review*

{¶9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

*Analysis*

{¶10} The criminal offense of possession of drugs is codified in R.C. 2925.11, which provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(A). To secure

a conviction for drug possession under R.C. 2925.11(A), the State must prove the defendant "knowingly" possessed a controlled substance. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶11} On appeal, Brown argues his possession convictions are based on insufficient evidence, arguing that the State failed to prove he constructively possessed the drugs found in the common areas of the residence. Specifically, he contends that his mere presence and awareness of the drugs are legally insufficient to establish dominion and control over the contraband. Emphasizing that the drugs were located in a shared living space accessible to others—including Jaquan Rogers ("Rogers"), the primary target of the law enforcement investigation— Brown asserts the State improperly conflated access with possession in direct contradiction to established Ohio case law.

{¶12} Because it is the only element Brown challenges on appeal, we review the sufficiency of the evidence supporting only whether he had constructive possession of the drugs. "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "The issue of whether a person charged

with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 2012-Ohio-5235, ¶ 45 (3d Dist.), quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

{¶13} "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.). "'A person has "actual possession" of an item if the item is within his immediate physical possession.'" *Id.*, quoting *State v. Williams*, 2004-Ohio-1130, ¶ 23 (4th Dist.). "A person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it." *Id.* "For constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982).

{¶14} "[T]he State may prove the existence of the various elements of constructive possession of contraband by circumstantial evidence alone." *Id. See also Jenks*, 61 Ohio St.3d at 272-273. "Readily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession." *State v. Ruby*, 2002-Ohio-5381, ¶ 36 (2d Dist.). "Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining

whether the defendant had constructive possession." *State v. Voll*, 2012-Ohio-3900, ¶ 19 (3d Dist.).

{¶15} Viewing the evidence in a light most favorable to the prosecution, we conclude that Brown's convictions for possession of drugs are supported by sufficient evidence. Brown relies heavily on the Supreme Court of Ohio's decision in *State v. Haynes*, 25 Ohio St.2d 264 (1971), to argue his mere co-tenancy is insufficient to establish possession. In *Haynes*, the Ohio Supreme Court held that "[t]he mere fact that one is the owner or lessee of premises upon which narcotics are found—where such premises are also regularly occupied by others as co-tenants and the narcotics are found in an area ordinarily accessible [sic] to all tenants—is not, without further evidence, sufficient to establish possession in the owner or lessee." 25 Ohio St.2d at 270. Emphasizing that a criminal conviction cannot rest upon mere speculation, the court concluded that "no inference of guilt in relation to any specific tenant may be drawn from the mere fact of the presence of narcotics on the premises." *Id.*

{¶16} However, *Haynes* is distinguishable from the present case. In *Haynes*, the uncontroverted evidence showed that the defendant had not occupied the jointly leased premises for a week prior to the search, and the State presented no evidence linking him to the drugs other than his status as a lessee. *Id.* at 270-271. Here, unlike in *Haynes*, the record reflects that Brown's proximity to the contraband was coupled with additional factors probative of his dominion and control. *See State v.*

*Carpenter*, 2019-Ohio-58, ¶ 26 (3d Dist.), citing *State v. Durr*, 2012-Ohio-4691, ¶ 46 (4th Dist.) (noting that a defendant's "'[m]ere presence in the vicinity of illegal drugs, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession'"), quoting *State v. Riggs*, 1999 Ohio App. LEXIS 4327, *11-12 (4th Dist. Sept. 13, 1999).

{¶17} Importantly, at trial, the State presented evidence that Brown's personal medication and named pill bottles were located in the immediate vicinity of the psilocybin mushrooms, marijuana, and drug-related paraphernalia (a scale). *Compare id.* at ¶ 28 (concluding that a jury may infer that a defendant knew of and was capable of exercising dominion and control over controlled substances based on the totality of the drug evidence discovered in the shared residence). Furthermore, Brown admitted to law enforcement that the marijuana found in the residence belonged to him. *Compare State v. Frye*, 2018-Ohio-894, ¶ 53 (3d Dist.). The record establishes that the methamphetamine pills, psilocybin mushrooms, and drug-related paraphernalia were found in the same proximity as his admitted marijuana. Specifically, the psilocybin mushrooms were found on a red table along with the drug-related paraphernalia, the admitted marijuana, and Brown's personal medication and named pill bottles.

{¶18} Likewise, the methamphetamine pills were located in the living room in close proximity to the admitted marijuana. Adding to this spatial connection, Detective Konner Kranz of the West Central Ohio Task Force testified that law

enforcement discovered a Motorola cell phone that they believed belonged to Brown stuffed inside a chair cushion next to the couch where the methamphetamine pills and marijuana were located. Moreover, Brown's statements to law enforcement regarding the methamphetamine pills found in the living room demonstrated his knowledge of and involvement with that specific contraband. In particular, he admitted to participating in retrieving the pills from the mailbox and bringing them into the shared home, establishing a temporal and spatial link between his connection to the contraband and its ultimate discovery in the living room—a space he readily accessed based on the evidence presented at trial. *Compare State v. Burney*, 2012-Ohio-3974, ¶ 31 (10th Dist.).

{¶19} Beyond establishing his knowledge of and involvement with the pills, the record also contradicts Brown's attempt to feign ignorance regarding their illicit nature. Indeed, while Brown claimed he believed the pills were children's vitamins, the video of his interview with law enforcement reveals Investigator Aaron Montgomery ("Investigator Montgomery") of the West Central Ohio Crime Task Force pointing out to Brown that they did not look like Flintstones vitamins. Investigator Montgomery subsequently confirmed this observation during his trial testimony, stating that the recovered pills did not resemble Flintstones vitamins. Finally, the physical evidence further undermined Brown's claim, as the pills were wrapped in cellophane rather than commercial packaging. *See State v. Braxton*, 2020-Ohio-424, ¶ 18 (12th Dist.) (noting an officer's testimony that discovering a

"cellophane-wrapped" pill is significant because such packaging is "common for either acquiring something illegally or preparing it for resale illegally").

{¶20} The State's evidence of constructive possession also extends beyond the pills found in the living room. Indeed, law enforcement also recovered a small amount of methamphetamine, alongside drug-related paraphernalia, in the kitchen cabinets. *See Durr*, 2012-Ohio-4691, at ¶ 51 (4th Dist.). Notably, when law enforcement executed the search warrant, Brown was discovered standing at a door just off the kitchen.

{¶21} Finally, the State further presented evidence tying Brown to a bedroom located off the living room, demonstrating his broader dominion and control over that portion of the residence. *Compare State v. Williams*, 2025-Ohio-1457, ¶ 24 (8th Dist.) (finding sufficient evidence of dominion and control where the defendant had access to the shared residence and his personal items, including mail and identification cards, were discovered in the home). In the bedroom, law enforcement discovered items that had been listed for sale on Brown's Facebook Marketplace account within the previous month, alongside an operable firearm. Also linking Brown to the room and the contraband, data extracted from Rogers's cell phone contained a video of Brown displaying a similar firearm, as well as a video of Brown at the red table where drugs were found.

{¶22} Notwithstanding the circumstantial evidence of dominion and control, Brown conceded during his interview with law enforcement that he was "aware of

what was going on" inside the house, satisfying the requirement that he was conscious of the presence of the contraband. *See Carpenter*, 2019-Ohio-58, at ¶ 24 (3d Dist.) (analyzing that a defendant's statements to police implying "that he was aware that the bag on the floor contained drugs" demonstrated his consciousness of the contraband).

{¶23} Importantly, this court has previously rejected the argument that shared occupancy negates a finding of constructive possession when other evidence links the defendant to the contraband. *See Frye*, 2018-Ohio-894, at ¶ 53 (3d Dist.). In *Frye*, we emphasized that a defendant's assertion that the drugs did not belong to him is "inconsequential" to the legal question of possession; ownership is irrelevant so long as sufficient evidence exists that the defendant exercised dominion and control over the substance. *Id.*

{¶24} Similar to the defendant in *Frye*, who admitted ownership of marijuana located in the same storage area as the contested drugs, Brown admitted ownership of the marijuana that was adjacent to the psilocybin mushrooms and situated next to the methamphetamine pills. Therefore, based on the attendant facts and circumstances of this case, the jury could properly infer that Brown knew or was aware that the controlled substances were in the house and that he was capable of exercising dominion and control over them, thereby establishing his constructive possession. *Id.*

{¶25} Finally, Brown's contention that Rogers was the primary target of the law enforcement investigation is unavailing. *See State v. Callender*, 1998 Ohio App. LEXIS 175, *6 (10th Dist. Jan. 20, 1998); *State v. Williams*, 2015-Ohio-2010, ¶ 17 (12th Dist.). In particular, the record reflects that law enforcement was investigating Rogers for trafficking in cocaine, and he was subsequently found with crack cocaine, not the methamphetamine or psilocybin mushrooms at issue here.

{¶26} Consequently, when considering the totality of the facts and circumstances presented by this case, we conclude that the jury could find beyond a reasonable doubt that Brown exercised dominion and control over the psilocybin mushrooms and methamphetamine. Therefore, the State presented sufficient evidence that Brown constructively possessed the psilocybin mushrooms and methamphetamine. Thus, Brown's drug possession convictions are based on sufficient evidence.

{¶27} Accordingly, Brown's first assignment of error is overruled.

**Second Assignment of Error**

**The trial court's consecutive-sentencing findings were clearly and convincingly unsupported by the record. Tr. at 371-387; July 14, 2025 Amended Judgment Entry at 9-11; *State v. Gwynne*, 2023-Ohio-3851; R.C. 2953.08(G)(2).**

{¶28} In his second assignment of error, Brown challenges the trial court's decision to impose consecutive sentences. He specifically contends that the record does not support the trial court's findings for imposing consecutive sentences.

*Standard of Review*

**{¶29}** Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. When reviewing the imposition of consecutive sentences, "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

**{¶30}** "Except as provided in . . . division (C) of section 2929.14, . . . a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). R.C. 2929.14(C) provides, in its relevant part, that

> the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the

offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶31} R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record before imposing consecutive sentences. *State v. Hites*, 2012-Ohio-1892, ¶ 11 (3d Dist.); *State v. Peddicord*, 2013-Ohio-3398, ¶ 33 (3d Dist.). Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Id.*; *Id.*

{¶32} The trial court must state the required findings at the sentencing hearing prior to imposing consecutive sentences and incorporate those findings into its sentencing entry. *State v. Sharp*, 2014-Ohio-4140, ¶ 50 (3d Dist.), citing *State v.*

-14-

*Bonnell*, 2014-Ohio-3177, ¶ 29. A trial court "has no obligation to state reasons to support its findings" and is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Bonnell* at ¶ 37.

**{¶33}** In this case, Brown does not dispute that the trial court made the required statutory findings before imposing consecutive sentences. Instead, Brown contends that the record clearly and convincingly does not support the trial court's findings under R.C. 2929.14(C)(4)(b) or (c). Specifically, Brown argues that the finding of great or unusual harm under R.C. 2929.14(C)(4)(b) cannot be reconciled with the trial court's factual finding that he did not cause or expect to cause physical harm. Furthermore, he contends that the finding under R.C. 2929.14(C)(4)(c) is unsupported, arguing that his criminal history is insignificant to warrant consecutive sentences and that his prior community control failure was merely a technical default.

**{¶34}** Brown's arguments are without merit, and the trial court's imposition of consecutive sentences is supported by the record. Importantly, because a trial court need only find one of the alternative factors under R.C. 2929.14(C)(4)(a)-(c) to impose consecutive sentences, this court need not address Brown's arguments regarding his "course of conduct" under R.C. 2929.14(C)(4)(b). *See State v. Robinson*, 2017-Ohio-2703, ¶ 12 (3d Dist.) (noting that the factors under R.C.

2929.14(C)(4)(a)-(c) operate as alternatives and a trial court need only find one to impose consecutive sentences).

**{¶35}** Turning to the trial court's alternate finding under R.C. 2929.14(C)(4)(c), the record supports the conclusion that consecutive sentences are necessary to protect the public based on Brown's history of criminal conduct. *See State v. Stackhouse*, 2025-Ohio-5464, ¶ 39 (3d Dist.), citing *State v. Combs*, 2025-Ohio-1702, ¶ 5 (3d Dist.) and *State v. Gallant*, 2025-Ohio-3182, ¶ 15 (3d Dist.). Indeed, the record reflects that Brown has a prior felony conviction for complicity to trafficking in cocaine (with an accompanying specification), a prior conviction for operating a vehicle under the influence ("OVI"), and an unsuccessful termination from community control.

**{¶36}** Nevertheless, Brown asserts that his criminal history does not justify consecutive sentences because his prior record is minimal—consisting of a single fifth-degree felony and a misdemeanor from 2017—and his unsuccessful termination from community control resulted solely from a failure to pay fines and costs, rather than a substantive violation. We are not persuaded by Brown's argument. *Comapre Robinson* at ¶ 14 (affirming consecutive sentences where the trial court properly weighed the defendant's criminal history, notwithstanding the defendant's attempt to minimize the significance of that history).

**{¶37}** Rather, a trial court's finding under R.C. 2929.14(C)(4)(c) is based on the existence of a defendant's history of criminal conduct and their failure to

successfully complete past sanctions, not on the underlying administrative reasons for why a prior sanction was revoked. *See Stackhouse* at ¶ 40 (explaining that a trial court's finding is "based on a defendant's history of criminal conduct and his or her failure to respond to past sanctions, not on the type of programming offered during those sanctions"); *State v. Goad*, 2019-Ohio-3957, ¶ 16 (7th Dist.) (affirming the trial court's reliance on the defendant's criminal history and the specific "opportunities for community control and probation which were given to Appellant," where the defendant's criminal conduct persisted despite those opportunities). As the record demonstrates, Brown was previously convicted of complicity to trafficking in cocaine and OVI, and he failed to respond favorably to the community control sanctions imposed for those crimes. Because an appellate court must employ a deferential standard to a trial court's consecutive-sentence findings, we cannot simply substitute our judgment for that of the trial court regarding the weight given to an offender's prior criminal record. *See Gwynne*, 2023-Ohio-3851, at ¶ 15 (noting that R.C. 2953.08(G)(2) expresses the legislature's intent that appellate courts employ a deferential standard and ensures they do not simply substitute their judgment for that of the trial court).

**{¶38}** Consequently, based on our review of the record, we conclude that the trial court's consecutive sentence findings are not clearly and convincingly unsupported by the record.

**{¶39}** Brown's second assignment of error is overruled.

{¶40} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**MILLER and WALDICK, J.J., concur.**

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

 

 

William R. Zimmerman, Judge

 

 

Mark C. Miller, Judge

 

 

Juergen A. Waldick, Judge

DATED:
/hls